Jonas B. Jacobson (Cal. Bar No. 269912)
jonas@dovel.com
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Attorneys for Plaintiff and all others similarly situated*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMBER FARMER, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>BARKBOX, INC.,<br><br>*Defendant*. | Case No. 2:22-cv-06242<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

# Table of Contents

I. Introduction......................................................................................................................... 1
II. Parties. ................................................................................................................................ 2
III. Jurisdiction and Venue. ....................................................................................................... 2
IV. Facts. ................................................................................................................................... 2
    A. California Automatic Renewal Law. ............................................................................. 2
    B. BarkBox violates the Automatic Renewal Law. ........................................................... 4
    C. BarkBox misled and injured Ms. Farmer. ..................................................................... 7
V. Class action allegations. ...................................................................................................... 9
    The California Class. .............................................................................................................. 9
VI. Claims. .............................................................................................................................. 10
    Count 1: Violation of the False Advertising Law – Automatic Renewal Law ....... 10
    Count 2: Unfair Competition Law (UCL) ....................................................................... 11
    Count 3: Consumers Legal Remedies Act (CLRA) ...................................................... 12
VII. Jury Trial Demand. ........................................................................................................... 13
VIII. Relief. ............................................................................................................................... 13

## I. Introduction.

1. In recent years, companies that sell goods online have sought to boost sales by enrolling their customers in automatically renewing shipment subscriptions. Some companies fail to make clear to consumers that they are being signed up for automatically recurring charges.

2. To protect Californians from this practice, California passed the Automatic Renewal Law (the ARL). The ARL requires companies who sign consumers up for automatically renewing purchases to provide "clear and conspicuous" disclosures about the autorenewal plan and obtain "affirmative consent" to enroll consumers. This protects consumers from being tricked into signing up for recurring shipments and charges.

3. Once a consumer is tricked into signing up and paying for an initial order, the harm is done, and the law does not put any burden on consumers to reject shipments or cancel the plan. If a company violates the ARL, all recurring shipments it makes to consumers are deemed "unconditional gifts." Consumers have no obligation to return the recurring shipments or cancel, even after they discover that they have been enrolled in an autorenewal plan. This gives the law teeth. It also protects consumers, because giving in to recurring shipments to avoid the hassle of cancelling is not the same as knowingly and affirmatively consenting to be enrolled in the first place.

4. BarkBox sells monthly subscription boxes of dog toys, treats, and chews. It offers a one-month plan, a 6-month plan and a 12-month plan. All plans automatically renew. For example, when the 6-month plan ends, the customer is automatically renewed for another 6 months of boxes (and 6 months of charges).

5. BarkBox does not provide clear and conspicuous disclosures or obtain affirmative consent before enrolling consumers for recurring subscription plans. Consumers like Plaintiff are being tricked into signing up for recurring plans, wrongly thinking that they are only signing up for the stated term (for example, for 6 months). Consumers are then wrongly charged for recurring shipments that are "unconditional

gifts" under the law. Plaintiff brings this case to put a stop to this conduct and obtain restitution for consumers.

**II.      Parties.**

6.      Plaintiff Amber Farmer is a citizen of California (domiciled in Mountain Center, California). The proposed class includes citizens of California.

7.      Defendant BarkBox, Inc. is a citizen of Delaware and New York. It is a Delaware corporation with its principal place of business in New York.

**III.     Jurisdiction and Venue.**

8.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from the Defendant.

9.      The Court has personal jurisdiction over Defendant because it sold subscription BarkBox products to consumers in California, including to Ms. Farmer.

10.     Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of Defendant's conduct giving rise to the claims occurred in this District, including selling a BarkBox subscription to Ms. Farmer.

**IV.     Facts.**

    **A.      California Automatic Renewal Law.**

11.     The Automatic Renewal Law ("ARL") is part of California's False Advertising Law. The purpose of the ARL is to "end the practice of ongoing" subscription charges "without the consumers' explicit consent for ongoing shipments of a product." Cal. Bus. & Prof. Code §17600. To this end, the law makes it illegal for companies to charge consumers for automatically renewing shipments of goods, unless the company meets strict disclosure and consent requirements.

12.     Under the ARL, a company must "present the automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity, or in the case of

2

an offer conveyed by voice, in temporal proximity, to the request for consent to the offer." Cal. Bus. & Prof. Code §17602(a)(1). [1]

13. The "automatic renewal offer terms" that must be presented include:

    1) That the subscription or purchasing agreement will continue until the consumer cancels.

    2) The description of the cancellation policy that applies to the offer.

    3) The recurring charges that will be charged to the consumer's credit or debit card or payment account with a third party as part of the automatic renewal plan or arrangement, and that the amount of the charge may change, if that is the case, and the amount to which the charge will change, if known.

    4) The length of the automatic renewal term or that the service is continuous, unless the length of the term is chosen by the consumer.

    5) The minimum purchase obligation, if any.

Cal. Bus. & Prof. Code §17601(b)(1)-(5).

14. A "clear and conspicuous" disclosure "means in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language." Cal. Bus. & Prof. Code §17601(c).

15. After presenting all of this information, the company must then obtain the "consumer's affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms." Cal. Bus. & Prof. Code §17602(a)(2).

16. The ARL also includes post-purchase acknowledgment requirements (required in addition to the pre-purchase requirements described above). Cal. Bus. &

---

[1] A new version of the ARL became effective July 1, 2022. This complaint cites to the previous version of the law (effective before July 1, 2022).

Prof. Code §17602(a)(3) & (b).

17. To give the law teeth, if a company violates this law, all shipments it makes to consumers are deemed "unconditional gifts" and the consumer "may use or dispose of the same in any manner he or she sees fit without any obligation whatsoever on the consumer's part to the business":

> In any case in which a business sends any goods, wares, merchandise, or products to a consumer, under a continuous service agreement or automatic renewal of a purchase, without first obtaining the consumer's affirmative consent as described in Section 17602, the goods, wares, merchandise, or products shall for all purposes be deemed an unconditional gift to the consumer, who may use or dispose of the same in any manner he or she sees fit without any obligation whatsoever on the consumer's part to the business.

Cal. Bus. & Prof. Code § 17603.

18. The goods are deemed unconditional gifts even after a consumer discovers that she was enrolled in an automatic renewal plan and accepts the monthly shipments without cancelling. Once a consumer is tricked into signing up and paying for an initial order, the harm is done, and the law does not put any "obligation whatsoever" on consumers to reject shipments or cancel the plan. Instead, the law places the burden on companies to comply with the law when first enrolling consumers. *Id.* This deters companies from tricking consumers into signing up for automatically renewing plans without sufficient disclosures. And it protects consumers, because giving in to recurring shipments is not the same as knowingly and affirmatively consenting to be enrolled in the first place. This is why the ARL expressly requires *pre-sale* disclosures and affirmative consent, rather than mere post-sale acquiescence.

**B.     BarkBox violates the Automatic Renewal Law.**

19. BarkBox sells boxes of dog toys, treats, and chews. The boxes ship to consumers each month.

4

20. BarkBox sells subscriptions on its website, barkbox.com. It offers a 1-month subscription plan, a 6-month plan and a 12-month plan. All plans automatically renew. For example, when the 6-month plan ends, the customer is automatically renewed for another 6 months of boxes (and 6 months of charges). And when the 12-month plan ends, consumers are automatically renewed and charged for another 12 months of boxes.

21. To sign up for a plan online, consumers first enter information about their dog, e.g., their dog's name, size, and any food allergies.

22. Consumers then enter their email and see this subscription plan menu:



23. These plans look like a commitment to receive Bark Boxes for the specified period: 12 months, 6 months, or a month. (BarkBox incentivizes consumers to make longer commitments, up front, by lowering the per-box price).

24. The only mention of automatic renewal is in the tiniest font on the page. It is also in pale grey text that blends into the white background (in contrast to the black,

bold, colored, or all capitals text used to convey other information). It is designed to go unnoticed.

25. Also, the word "CONTINUE" in the blue button does not tell consumers that they are agreeing to anything by clicking.

26. After picking a plan, consumers see add-on product options and select a theme for their first box. Consumers then enter their shipping information and are presented with this payment screen:



27. In tiny, pale-grey text, this page mentions that by clicking "Buy now" customers commit to the length of the plan, and that they agree to the terms and privacy policy. It does not mention automatic renewal.

6

28. Buried in the linked "Terms," there is more information about automatic renewal (Exhibit 1, Terms). This is the opposite of the clear and conspicuous disclosure required by the ARL. The link is hidden in tiny print, the word "Terms" does not indicate anything about automatic renewal, and the additional terms are not even on the same page as the BUY NOW button (much less in visual proximity). Further, the BUY NOW button does not flag for consumers that they are agreeing to anything, much less agreeing to automatic renewal.

29. BarkBox reasonably should know that its automatic renewal process misleads reasonable consumers. On the Better Business Bureau website, consumers complain about being surprised by the automatic renewal. BarkBox responds to each complaint, using variations of this boilerplate explanation: "All of our plans do automatically renew unless the autorenewal is disabled prior to the end of the original commitment. We do try to make this clear upon sign up but we understand it can get missed. Our sincerest apologize that this renewal caught you off guard." BarkBox, however, does not try to make the automatic renewal clear—it does the opposite.

**C.  BarkBox misled and injured Ms. Farmer.**

30. Ms. Farmer signed up for a BarkBox subscription, on the BarkBox website, in or around January of 2021. She purchased the 6-month subscription plan, which committed her to 6 months of boxes, at approximately $26 per box ($28 after additional fees and expenses). She believed that her plan would end after 6 months. In other words, she believed that she was signing up for a single, non-renewing subscription that would last 6 months, and that she was purchasing a total of 6 boxes. Without her knowledge or consent, BarkBox enrolled her for automatically renewing 6-month subscriptions, i.e., when her first 6-month term ended she would be automatically charged for another 6-month term, and so on indefinitely. If Ms. Farmer had known that BarkBox was automatically enrolling her for recurring subscriptions, she would not have purchased her initial 6-month subscription program, i.e., she would not have spent money that she otherwise spent.

7

31. In mid-2021, Ms. Farmer was automatically renewed for another 6-month subscription. She continued receiving boxes (and getting charged for them). When she realized she had been automatically renewed, she attempted to log in to her account to cancel. But her log-in was not working. Because cancellation was a hassle and her dog was using the boxes, she resigned herself to keep receiving and paying for boxes. This is not something she would have agreed to up front if BarkBox had complied with the Automatic Renewal Law.

32. After Ms. Farmer was illegally enrolled in an automatically renewing subscription, by operation of the ARL, all boxes were unconditional gifts. She was automatically renewed again at the end of 2021, and again in mid-2022. Because all of these renewals were illegal under the ARL, she had no "obligation whatsoever" to return the boxes or cancel, and BarkBox had no legal basis to continue to charge for any shipped boxes.

33. In or around August of 2022, Ms. Farmer was reviewing her subscriptions and realized how long she had been automatically paying for Bark Boxes. Although she had no obligation under the law to do so, at this point she reached out to BarkBox online about resetting her log-in so she could cancel. It took multiple attempts to succeed. After her first attempt to work with customer service to reset her log-in, she still could not log-in. It took a second round with customer service to fix the issue and allow her to get into her account. She then cancelled her auto-renewal. Even after she cancelled the auto-renewal, BarkBox is still charging her for the remainder of her latest 6-month term.

34. Ms. Farmer faces an imminent threat of future harm. Her dog likes the BarkBox products and she would buy a (limited term, non-renewing) subscription again if she could feel sure that BarkBox would not illegally auto-renew her. But without an injunction, she cannot trust that BarkBox will comply with the ARL.

35. Ms. Farmer has no adequate remedy at law. The equitable claims that she asserts uniquely allow her to obtain full restitution under the "unconditional gift"

provision of the ARL.

## V. Class action allegations.

### The California Class.

36. Ms. Farmer brings her claims for the following class: all persons who purchased a BarkBox subscription in California, during the applicable statute of limitations period.

37. The following people are excluded from the Class and the Subclasses: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

### Numerosity

38. The proposed class contains members so numerous that separate joinder of each member of the class is impractical. There are tens or hundreds of thousands of class members.

### Commonality

39. There are questions of law and fact common to the proposed class. Common questions of law and fact include, without limitation: (1): whether BarkBox's automatic renewals violate the ARL and California consumer protection laws and; (2): restitution needed to compensate Plaintiff and the Class.

### Typicality

40. Plaintiff's claims are typical of the class. Like the class, Plaintiff purchase a BarkBox subscription that violated the ARL.

*Predominance and Superiority*

41. The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudication with respect to individual members, which would establish incompatible standards for the parties opposing the class.

42. Common questions of law and fact predominate over any questions affecting only individual members of the proposed class. These common legal and factual questions arise from central issues which do not vary from class member to class member, and which may be determined without reference to the individual circumstances of any particular class member. For example, a core liability question is common: whether BarkBox's subscriptions violate the ARL and California consumer protection laws.

43. A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical. It would be unduly burdensome to have individual litigation of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

**Classwide injunctive relief**

44. BarkBox has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief is appropriate respecting the class as a whole.

**VI.  Claims.**

**Count 1: Violation of the False Advertising Law – Automatic Renewal Law**

45. Plaintiff incorporates the facts alleged above.

46. Plaintiff brings this claim individually and for the class.

47. As alleged in detail above, Defendant violated the ARL by failing to present the terms of its automatic renewal or continuous service offer in a clear and conspicuous manner before fulfilling the subscription and in visual proximity to the request for consent to the offer.

48. Defendant also violated the ARL by charging Plaintiff and class members for automatic renewals or continuous service without first obtaining the consumer's affirmative consent to the agreement containing the automatic renewal offer terms or continuous offer terms.

49. Defendant's violations were a substantial factor and proximate cause of economic harm to Plaintiff and class members.

## Count 2: Unfair Competition Law (UCL)

50. Plaintiff incorporates the facts alleged above.

51. Plaintiff brings this claim individually and for the class.

### *Unlawful*

52. Under the "unlawful" prong of the UCL, a violation of another law is treated as unfair competition and is independently actionable. Defendant committed unlawful practices because, as alleged above and incorporated here, it violated California Automatic Renewal Law. In addition, as alleged below and incorporated here, Defendant violated the CLRA.

### *Unfair*

53. As alleged in detail above, Defendant committed "unfair" acts by enrolling consumers in automatically recurring subscriptions, in violation of the ARL.

54. The harm to Plaintiff and the class greatly outweighs the public utility of Defendant's conduct. There is no public utility to illegal automatic renewal practices. This injury was not outweighed by any countervailing benefits to consumers or competition. Illegal auto-renewal practices only injure healthy competition and harm consumers.

55. Plaintiff and the class could not have reasonably avoided this injury. Defendant's representations were deceiving to reasonable consumers like Plaintiff. There were reasonably available alternatives to further Defendant's legitimate business interests, such as complying with the ARL.

56. Defendant violated established public policy by violating the ARL. The

unfairness of this practice is tethered to a legislatively declared policy (that of the FAL and ARL).

57. Defendant's conduct, as alleged above, was immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

### Deceptive

58. As alleged in detail above, Defendant committed "deceptive" acts by enrolling consumers in automatically recurring subscriptions, in violation of the ARL.

59. Defendant's representations and deficient ARL disclosures were misleading to Plaintiff and other reasonable consumers.

60. Plaintiff relied upon Defendant's misleading representations and omissions, as detailed above.

* * *

61. Defendant's violative conduct was a substantial factor and proximate cause of economic harm to Plaintiff and class members.

## Count 3:  Consumers Legal Remedies Act (CLRA)

62. Plaintiff incorporates the facts alleged above.

63. Plaintiff brings this claim individually and for the class.

64. Defendant violated Cal. Civ. Code §1770, (a)(5) by representing that its box subscription plans have certain characteristics that they do not have.  Defendant represented that its subscriptions were one-time subscriptions for a set period, when in fact they were automatic renewal plans.

65. Defendant violated Cal. Civ. Code §1770, (a)(9) by advertising goods with the intent not to sell them as advertised. Defendant advertised its box subscription plans as one-time subscriptions, but intended to sell them as automatic renewal plans.

66. Defendant's violative conduct was a substantial factor and proximate cause of economic harm to Plaintiff and Class members.

67. Plaintiff and class members seek injunctive relief.

12

**VII. Jury Trial Demand.**

68. Plaintiff demands the right to a jury trial on all claim so triable.

**VIII. Relief.**

69. Plaintiff seeks the following relief for herself and the class:

- An order certifying the asserted claims, or issues raised, as a class action;
- A judgment in favor of Plaintiff and the class;
- Restitution, and other just equitable relief;
- An injunction;
- Pre- and post-judgment interest;
- Any additional relief that the Court deems reasonable and just.

Dated: September 1, 2022            Respectfully submitted,

By: /s/ *Jonas B. Jacobson*

Jonas B. Jacobson (Cal. Bar No. 269912)
jonas@dovel.com
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Attorneys for Plaintiff*